[No. 3471.]

## Steve Lewis *v.* The State.

Assault with Intent to Murder — Charge of the Court — Case Stated.— In the trial of appellant for assaulting one S. with intent to murder him, there was evidence that, in the night-time, and about sixty yards from defendant's house, he found his daughter and S. in close juxtaposition on the ground, and that S., observing defendant's approach, jumped up, caught the girl's hand, said "Come on," and tried to pull her along with him; whereupon she jerked loose from S., and the defendant fired upon him. *Held,* that this evidence sufficed to present the issue whether the defendant had reasonable cause to believe, and did believe, that S. was having or trying to have carnal connection with the girl, and whether such belief so aroused the defendant's passions as to render him incapable of cool reflection at the time he fired upon S. The trial court erred in failing to submit that issue to the jury, with instructions that if they determined it affirmatively they should not find the defendant guilty of assault with intent to murder.

APPEAL from the District Court of Waller. Tried below before the Hon. W. H. Burkhart.

The conviction in this case was for an assault with intent to murder one William Sanders, in Waller county, Texas, on the 25th day of September, 1883. A term of two years in the penitentiary was the penalty assessed by the jury.

William Sanders was the first witness for the State. He testified that on the night of September 25, 1883, he and Colonel Norwood walked down the public road past defendant's house to see about some cattle, and soon returned the same way, laughing and talking. After witness and Colonel Norwood had passed the defendant's house, on their return, the defendant's daughter Parthena, to whom the witness was engaged, and whom he expected to marry soon, called out: " Is that you, Mr. Sanders?" Witness replying in the affirmative, Parthena said: "You don't have to pass here." Witness replied: "I don't have to go there." Witness stopped, and Colonel Norwood walked on. Parthena and her sister Mary came up to witness. Mary soon returned home, and witness and Parthena walked on up the road some fifty or sixty yards from the defendant's house, stopped and entered into a conversation. After talking with Parthena some little time, witness saw the defendant approaching from the direction of the house, with a shot-gun. When defendant reached a point within a few feet of witness he raised his gun and leveled it at witness. Witness exclaimed: " Don't point that gun at me, Uncle Steve; it might go off." Witness then started up the road, when defendant fired, striking the witness in his hind parts. He tried to shoot again but his gun missed fire. Defendant then went back towards his home. Witness and Parthena, who was to his left, were in the road when the witness was shot. Before firing, the defendant told Parthena to get out of the way. Witness was walking from defendant, with his back towards defendant, when he was shot. Witness was laid up five or six weeks by the wounds. Defendant, witness and Parthena were the only parties present when the shooting occurred. The stars were shining. Defendant was at church on the preceding Sunday night, and had his gun with him. He and witness had a few words on that occasion. Defendant had never forbidden witness going to his house. When Parthena came to witness as described, she took witness's arm and walked with him some fifty or sixty yards up the road. Defendant used a double-barreled shot-gun. This all occurred in Waller county, Texas, on the night of September 25, 1883.

William Barnes testified, for the State, that he was at church on the night of the shooting, and saw the defendant there, with his shot-gun, sitting on the fence. Rial Waul and witness went to church together, meeting Sanders and Colonel Norwood on the road. Waul went to the fence and said something to defendant, and the defendant left immediately, going in the direction of his home.

Colonel Norwood, the next witness for the State, testified to substantially the same facts as did Sanders up to the time that Sanders was joined by Parthena, when he walked off. Witness had no recollection of hearing the defendant say that he did not want Sanders to visit his house.

Sam Haynes testified, for the State, that he was at church on the Sunday before the shooting, and heard the defendant raise a quarrel with Sanders. He heard defendant and Sanders talking, but could not hear what they had to say. Defendant had his gun. Soon after this quarrel defendant went into the house, but returned in a short time and said that he understood that Sanders had said he could whip his own daddy. This was about two days before the shooting. Witness had heard Sanders say that he and Parthena were engaged to be married.

The opinion sets out the substance of the testimony of Parthena Lewis.

Rial Waul testified, for the defense, that he went to church with William Barnes on the night of the shooting. He saw defendant there, but had no recollection of saying anything to him. Defendant left church shortly after the witness and Barnes arrived. Witness denied that he had ever stated to Mr. Browne in his office that he, witness, had advised Sanders to keep away from defendant's house, as the defendant suspected him of a criminal intimacy with his daughter Parthena, and that Sanders replied that he had done with the girls as he liked, and would do so again, and moreover would hurt old Lewis if he fooled with him. Addressing counsel, the witness said: "You wanted me to swear to it, and I told you I could not and would not, and you then told the defendant that if he had no better witness than Rial Waul, he had better hunt tall timber." Counsel for defendant then asked witness what he supposed he had been placed upon the stand for, if he did not make such a statement. Witness replied that he did not know.

The motion for new trial complained of the action of the court in refusing a special charge; of the failure of the court to charge the law of aggravated assault, and of the sufficiency of the evidence to support the verdict.

*Harvey & Browne*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. Appellant was convicted of an assault with intent to murder William Sanders.

From the testimony of Parthena Lewis, daughter of the defendant, she and Sanders were seen sixty yards from the house of defendant, where the shooting occurred. It was at night and they were alone. She says: "I was sitting down, and Sanders was squatting down by me. In a short time my father came from the direction of the house. Sanders remarked: 'Here comes the old man;' and jumped up, and I got up also. Sanders took me by the hand and said, 'Come on,' and tried to pull me along the road with him. I jerked loose, and about this time the defendant shot Sanders. Sanders used no violence towards me, nor did he treat me in any way ungentlemanly at that time or any other time. I was engaged to be married to Sanders, which was to take place in a couple of weeks, and we had been talking about our love affairs prior to the shooting. Sanders did not try to force me to go with him, but to persuade me."

There is no proof in the record that the defendant knew of the engagement between Sanders and his daughter. There are in this, as in nearly all cases, two theories. That for the State will not be discussed, as it is a well settled rule that it is the duty of the trial judge to charge the law applicable to all the phases of the case, which has any support in the evidence, or any part of the evidence. What, then, is the theory of the defense? Evidently that Sanders and the defendant's daughter were either actually engaged in fornication, or that it was the purpose and intention of Sanders to seduce the defendant's daughter.

Were the surrounding facts of such a character as to present this theory? The defendant found Sanders and his daughter alone, some sixty yards from her home, at night, she sitting and Sanders squatting by her, and, when he approaches, Sanders jumps up and attempts to induce his daughter to go off with him; whereupon he shoots Sanders. Now, we would ask if those facts were not enough to arouse the passions of the defendant to such a degree as to render his mind incapable of cool reflection? Be this as it may, it was most clearly the duty of the court to submit this question to the jury. The jury should have been instructed that if, from the evidence, they believed that defendant had reasonable grounds to believe, and did believe, that Sanders and his daughter were, or had

been, engaged in fornication, or that Sanders was engaged in attempting to seduce his daughter, and that thus believing his passions were aroused to such a degree as to render his mind incapable of cool reflection, and that under the influence of such passion he shot Sanders, then they should find defendant not guilty of an assault with intent to murder. We are not attempting to give a formal charge upon this subject, but merely desire to call attention to the substance of a charge which we think should have been given.

Counsel for appellant, by a special charge, called the attention of the court to this phase of the case, but the court refused his requested charge. One ground of the motion for new trial, urged by the defendant, was the failure of the court to present in its charge this theory of the case.

We are of opinion that this omission in the charge of the court is such error as to require a reversal of the judgment.

*Reversed and remanded.*

[Opinion delivered April 29, 1885.]